*WENDY J. OLSON, IDAHO STATE BAR NO. 7634*
*UNITED STATES ATTORNEY*
*GEORGE W. BREITSAMETER, IDAHO STATE BAR NO. 2871*
*ASSISTANT UNITED STATES ATTORNEY*
*DISTRICT OF IDAHO*
*MARK L. WILLIAMS*
*TRIAL ATTORNEY*
*U. S. DEPARTMENT OF JUSTICE TAX DIVISION*
*WASHINGTON GROUP PLAZA IV*
*800 EAST PARK BOULEVARD, SUITE 600*
*BOISE, IDAHO 83712-7788*
*TELEPHONE:  (208) 334-1211*
*FACSIMILE:  (208) 334-1038*

U.S. COURTS

FEB 2 6 2013

Rcvd_____Filed_____Time_____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

*UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO*

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) CR No. 1:13-cr-45-BLW |
| Plaintiff, | ) |
| | ) **RULE 11 PLEA AGREEMENT** |
| vs. | ) |
| | ) |
| GARY BRINGHURST, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Rev. November 2012 (General)

## I.   GUILTY PLEA

**A.   <u>Summary of Terms</u>.**  Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the defendant, the attorney for the defendant, and the Government[1] agree that the defendant will waive Indictment and plead guilty to Count One of the Information, which charges the defendant with Conspiracy to Commit Securities Fraud, in violation of Title 18, United States Code, Section 371, and Title 15, United States Code, Sections 77q and 77x.

This plea is voluntary and did not result from force, threats, or promises, other than any promise made in this Plea Agreement.  Upon acceptance of the defendant's guilty plea and the defendant's full compliance with the other terms of this Agreement, the Government, under Federal Rule of Criminal Procedure 11(c)(1)(B), will recommend the terms of the plea agreement as set forth herein.  The defendant agrees that the Court may consider uncharged "relevant conduct."  USSG § 1B1.3.  However, the defendant reserves the right to object to the Court's determination of what constitutes relevant conduct.

**B.   <u>Oath</u>.**  The defendant will be placed under oath at the plea hearing.  The Government may use any statement that the defendant makes under oath against the defendant in a prosecution for perjury or false statement.

## II.   WAIVER OF CONSTITUTIONAL RIGHTS AT TRIAL

The defendant understands that by pleading guilty, the defendant waives the following rights:  1) the right to plead not guilty to the offenses charged against the defendant and to persist in that plea; 2) the right to a trial by jury, at which the defendant would be presumed innocent and the burden would be on the Government to prove the defendant's guilt beyond a reasonable doubt; 3) the right to have the jury agree unanimously that the defendant was guilty of the

---

[1] The word "Government" in this Agreement refers to the United States Attorney for the District of Idaho.

offense; 4) the right, at trial, to confront and cross-examine adverse witnesses; 5) the right to

present evidence and to compel the attendance of witnesses; and 6) the right not to testify or

present evidence without having that held against the defendant.  If the District Court accepts the

defendant's guilty plea, there will be no trial.

III.    **NATURE OF THE CHARGES**

     A.    <u>**Elements of the Crime**</u>.  The elements of the crime of Conspiracy to Commit

Securities Fraud, as charged in Count One of the Information, are as follows:

        1.    First, beginning by at least January 1, 2007, and ending on or about

November 30, 2008, there was an agreement between two or more persons to commit the crime

of securities fraud;

        2.    Second, the defendant became a member of the conspiracy knowing of at

least one of its objects and intending to help accomplish it; and

        3.    Third, one of the members of the conspiracy performed at least one overt

act for the purpose of carrying out the conspiracy.

    There are three elements of the crime of securities fraud:

        1.    First, there was an offering or sale of securities, as described in the

Information;

        2.    Second, in the offer or sale of these securities the means or instruments of

transportation or communication in interstate commerce were used or the United States mails

were used; and

        3.    Third, in the offer or sale of securities, the defendant and others

knowingly and deliberately employed a device, scheme, or artifice to defraud; and obtained

money and property by means of an untrue statement of a material fact or an omission of a material fact.

    **B.**    **Factual Basis.**  If this matter were to proceed to trial, the Government and the defendant agree that the following facts would be proven beyond a reasonable doubt:

From at least January 1, 2007, through in or around November 30, 2008, the defendant, D.S., M.E., J.S., D.S.2 and others held senior management positions at DBSI and or related companies.

DBSI, a conglomerate of companies headquartered in Meridian, Idaho, engaged in the acquisition, development, management and sale of commercial real estate properties throughout the United States.  DBSI sold a range of investment products, including tenant-in-common 1031 exchange interests (TIC investments), development fund investments, and other note and debt offerings.  DBSI also heavily invested in a small number of emerging technology "start-up" companies.

By at least 2006, the vast majority of DBSI's business and profits involved the sale of TIC investments pursuant to a "Master Lease."  DBSI sold TIC investments through Regulation D (Reg D) Private Placements and, in so doing, provided prospective investors, as well as broker-dealers, with Private Placement Memorandums (PPMs) that purported to disclose accurate information about DBSI's finances and operations.

In order to sell TIC investments, DBSI acquired commercial or residential real estate properties from unrelated third-party sellers, and then almost immediately sold off fractional interests of the real estate properties to tenant-in-common investors (TIC investors) as tenants-in-common.  TIC investors purchased the properties from DBSI for a significantly higher price, oftentimes 20% - 30% more than DBSI paid for the real estate.  In order to induce

investors into investing with DBSI, and to justify the markup in price, DBSI master-leased the entire property from the TIC investors.

The Master Lease was essentially a lease-back guarantee wherein DBSI would lease the real estate from TIC investors in order to sublease the real estate to commercial tenants. DBSI was entitled to all funds received from the commercial tenants. In return, DBSI paid each TIC investor an annual return of approximately 6% to 7% on their investments throughout the period of the master lease. During the period of the master lease, DBSI was responsible for all the costs of operating, managing, leasing and maintaining the property.

As owners of the property, TIC investors were responsible for tenant improvements and capital expenditures on their respective property. DBSI collected "accountable reserves" from TIC investors, approximately 10% of a TIC investor's investment, which was in addition to a TIC investor's investment, in order to cover expected tenant improvement and capital expenditure costs. DBSI represented to investors that accountable reserves "represent funds paid to the Company (DBSI) by tenant-in-common buyers for future building improvements and leasing commissions related to the real estate properties that they buy. As the Company incurs costs related to building improvements and leasing commissions for the specific properties, the reserves are reduced. Any reserves remaining at the time that the properties are sold are payable to the respective owners."

During 2008, DBSI offered TIC investments in the following properties: DBSI North Stafford, LLC; DBSI Oakwood Plaza Acquisition; DBSI Pinehurst Square West; DBSI Shoppes at Trammel LLC; DBSI Pinehurst Square East; DBSI Peachtree Corners Pavilion LLC; DBSI Florissant Market Place LLC; and DBSI Belton Town Center LLC.

The TIC investments listed above were marketed to investors through a PPM, which was distributed to broker dealers and investors throughout the United States. Investors

relied upon the accuracy of the disclosures in the PPM in purchasing TIC investments from DBSI.

 The respective PPM for each of the 2008 TIC investments, along with other written and oral disclosures, were designed to mislead investors into believing DBSI was a financially strong company and the Master Lease structure was a viable business model in order to induce investors to invest in DBSI.  In  truth, in 2007 and 2008, DBSI was dependent on money received from new investors, including Accountable Reserves raised under the auspice that they would be used only for improvements to an investor's property, in order to meets its prior obligations, including Master Lease payments.

 During 2007 and 2008, the defendant, D.S., J.S., D.S.2 and others attended weekly cash meetings wherein they knew from said meetings that DBSI's business model was unsustainable and DBSI could only pay its existing obligations by raising funds from new investors.

 During 2007 and 2008, the defendant, D.S., J.S., D.S.2 and others attended weekly cash meetings wherein they well knew that if an accurate financial picture of DBSI was disclosed to the investing public, DBSI would have been unable to attract new investors.

 During 2007 and 2008, the defendant, D.S., M.E., J.S., D.S.2 and others, conspired and agreed to offer and sell TIC investments to investors knowing that DBSI business model was unsustainable.  DBSI's financial condition was not as strong as portrayed in PPMs, which did not disclose that funds from new investors were required to pay its existing obligations to prior investors.

 During 2007 and 2008, the defendant, D.S., M.E., J.S., D.S.2 and others conspired and agreed to mislead investors, among other things:

\* Representing to investors that "Accountable Reserves" would be used "for tenant improvements, leasing improvements, leasing commissions and capital improvements." These representations were false and misleading because the funds, in fact, were intentionally diverted and commingled with general funds of DBSI and applied for various uses, including but not limited to the payment of interest payments to investors, general operations of DBSI, and investments by DBSI in technology companies. Investors were told that accountable reserves not used for the delineated purpose would be repaid "to the extent not used in the operation of the Property"; when in truth and in fact, DBSI did not have the financial ability to repay investors the Accountable Reserves it collected.

\* Falsifying financial statements of DBSI Housing, Inc., that were included in PPMs in order to represent DBSI as a financially strong company. Among the falsities, the value or net worth of DBSI Housing was fraudulently inflated. For example, PPMs represented that as of June 30, 2007, DBSI Housing, Inc., had a net worth of $105,900,419. However, the "assets" of DBSI included a material amount of "accounts receivable from affiliates," approximately $80,000,000, from emerging technology "start-up" companies. Despite representations in PPMs to the contrary, these funds were almost wholly uncollectible, as none of the technology companies had the ability to pay any debts owed to DBSI. Further, these "accounts receivable from affiliates" were fraudulently misrepresented as "current" assets, i.e., that the funds were collectible by DBSI within the next twelve (12) months despite many of the "loans" having notes that

called for their repayment on dates more than twelve (12) months away. Further, these "accounts receivable from affiliates" were misrepresented to be "loans from affiliates" when, in fact, many of the technology companies were told that they did not need to pay back "the loans" to DBSI. In addition, the "accounts receivable from affiliates" was concealed from investors by offsetting said "receivables" against short-term liabilities in order to conceal from investors that a material amount of DBSI's equity was made up of uncollectible "loans."

* Misrepresenting DBSI's financial condition to investors by omitting from PPMs that the Master Lease Program, as described above, was incurring a material amount of losses and was not sustainable. For example, in 2007, the Master Lease program approximate incurred losses of thirty-four (34) million dollars. This was not disclosed to TIC investors. In fact, DBSI principals regularly misrepresented to investors, broker-dealers, and due diligence officers that the Master Lease portfolio was making money when, in fact, the master lease structure was not sustainable and lost more money each and every year.

* Misrepresenting DBSI's financial condition to investors by omitting from PPMs that funds from new investors were necessary to fund not only the existing obligations owing to existing investors under the Master Lease program, but that DBSI in its entirety was wholly dependent on funds from new investors. Prospective investors were not told that any and all future obligations due to them from DBSI, including fixed payments under

Plea Agreement                                         -7-

the Master Lease, were contingent on DBSI's ability to raise funds from new investors.

The Government asserts that one of the overt acts that was done or caused to be done in furtherance of the conspiracy to commit securities fraud involves the offer and sale of TIC interest in the Oakwood Plaza LLC. The TIC interest was purchased by R.H. and B.H., husband and wife, of Helena, Montana. On or about May 27, 2008, R.H. and B.H. invested approximately $450,000.00 in the DBSI Oakwood Plaza LLC through an electronic transfer of funds in interstate commerce from Montana to Idaho. R.H. and B.H. relied upon the materially false information, as described above, in purchasing said TIC.

## IV.    SENTENCING FACTORS

A.    **Penalties.** A violation of Conspiracy to Commit Securities Fraud, as charged in Count One of the Information, is punishable by a term of imprisonment of five (5) years, a term of supervised release of not more than three (3) years, a maximum fine of $ 250,000, and a special assessment of $100.

B.    **Supervised Release.** The Court may impose a period of supervised release. No agreement exists as to the length of supervised release.

The law permits the combined prison time and term of supervised release to exceed the maximum term of incarceration for the crimes to which the defendant is pleading guilty. Violation of any condition of supervised release may result in further penalties and/or prosecution.

C.    **Fines and Costs.** The Court may impose a fine. No agreement exists as to the amount of the fine. The Court may also order the defendant to pay the costs of imprisonment, probation, and supervised release.

The defendant may request that the Court impose no fine given the substantial civil consequences of his guilty plea.

D.　　**Special Assessment**.  The defendant will pay the special assessment before sentencing and will furnish a receipt at sentencing.  Payment will be made to the United States District Court, Clerk's Office, Federal Building and United States Courthouse, 550 West Fort Street, Fourth Floor, Boise, Idaho 83724.

E.　　**Restitution**.  In addition to any fine or costs imposed, the Court may order the defendant to pay restitution, as provided by law.  The defendant may request that the Court impose no restitution given the substantial civil consequences of his guilty plea and the pending parallel civil proceedings.

V.　　**UNITED STATES SENTENCING GUIDELINES**

A.　　**Application of Sentencing Guidelines**.  The Court must consider the United States Sentencing Guidelines (USSG) in determining an appropriate sentence under 18 U.S.C. § 3553.

The Court is not a party to the Plea Agreement.  The Plea Agreement does not bind the Court's determination of the Sentencing Guidelines range.  The Court will identify the factors that will determine the sentencing range under the Sentencing Guidelines.  While the Court may take the defendant's cooperation, if any, and the recommendations of the parties into account, the Court has complete discretion to impose any lawful sentence, including the maximum sentence possible.

Recognizing that the Court is not bound by this Agreement, the parties agree to the recommendations and requests set forth below.

B.　　**Sentencing Guidelines Recommendations and Requests**.

1.     **Acceptance of Responsibility.**  If the defendant clearly accepts responsibility for the offense, the defendant will be entitled to a reduction of two levels in the combined adjusted offense level, under USSG § 3E1.1(a).  The Government will move for an additional one-level reduction in the combined offense level under § 3E1.1(b) if the following conditions are met:  (1) the defendant qualifies for a decrease under § 3E1.1(a); (2) the offense is level 16 or greater; and (3) the defendant has timely notified authorities of the defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.  If, before sentence is imposed, the defendant fails to meet the criteria set out in USSG § 3E1.1, or acts in a manner inconsistent with acceptance of responsibility, the Government will withdraw or not make such a recommendation.     2.     **Applicable Offense Level.**  The Government agrees to recommend that the defendant be sentenced at the low end of the sentencing range of an offense level of seventeen (17) calculated under Section 2B1.1 of the Sentencing Guidelines. The defendant will request that the Court impose a sentence at a lower offense level.

3.     **Downward Departure or Variance Request by Defendant.**  Unless otherwise specified in this paragraph, the defendant will not seek a downward departure or variance under 18 U.S.C. § 3553(a), without first notifying the Government of the defendant's intent to seek a downward departure and the defendant's reasons and basis therefor, such notice to be provided not less than twenty-one (21) days before the date set for sentencing.

## VII.   WAIVER OF APPEAL AND 28 U.S.C. § 2255 RIGHTS

A.     In exchange for this Agreement, and except as provided in subparagraph B, the defendant waives any right to appeal or to collaterally attack the entry of plea, the conviction, entry of a lawful judgment, and lawful sentence.

The defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the defendant might file challenging the plea, conviction or sentence in this case.  Further, if the defendant violates this waiver it will be a breach of this Agreement, and the Government may withdraw from this Plea Agreement and take other remedial action.

If the defendant believes the Government has not fulfilled its obligations under this Agreement, the defendant will object at the time of sentencing; further objections are waived.

B.     Notwithstanding subparagraph A, the defendant shall retain the right to file one direct appeal only if one of the following unusual circumstances occurs; the defendant understands that these circumstances occur rarely and that in most cases this Agreement constitutes a complete waiver of all appellate rights:

1.     The sentence imposed by the District Court exceeds the statutory maximum;

2.     The District Court arrived at an advisory Sentencing Guidelines range by applying an upward departure under Chapter 5K of the Guidelines; or

3.     The District Court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory Sentencing Guidelines range as determined by the District Court.

Notwithstanding subparagraph A, the defendant may file one habeas petition (motion under 28 U.S.C. § 2255) for ineffective assistance of counsel only if:  (1) the motion is based solely on information not known to the defendant at the time the District Court imposed

sentence; and (2) in the exercise of reasonable diligence, the information could not have been known by the defendant at that time.

## VIII.  PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The defendant agrees to provide material financial and other information requested by a representative of the United States Probation Office for use in preparing a presentence report. Failure to execute releases and provide information for the presentence report violates this Agreement and relieves the Government of its obligations in this Agreement.  Such failure and response by the Government will not, however, constitute grounds for withdrawing the plea of guilty unless the Government so requests.  Providing materially false information will subject the defendant to additional penalties, including an enhancement under USSG § 3C1.1.

## IX.  NO RIGHT TO WITHDRAW PLEA

The defendant understands that the Court may not follow the recommendations or requests made by the parties at the time of sentencing.  The defendant cannot withdraw from this Plea Agreement or the guilty plea, regardless of the Court's actions.

## X.  CONSEQUENCES OF VIOLATING AGREEMENT

A.  **Government's Options.**  If the defendant fails to keep any promise in this Agreement or commits a new crime, the Government is relieved of any obligation to do the following:  1) make a sentencing recommendation consistent with the terms promised in this Agreement; and 2) not to prosecute the defendant on other charges, including charges not pursued due to this Plea Agreement.  Such charges may be brought without prior notice.  In addition, if the Government determines after sentence is imposed that the defendant's breach of the Agreement warrants further prosecution, the Government may choose between letting the conviction under this Agreement stand or vacating such conviction so that such charges may be

re-prosecuted.  If the Government determines that a breach warrants prosecution before

sentencing, it may withdraw from the Plea Agreement in its entirety.

The Government's election to pursue any of the above options cannot be a basis

for the defendant to withdraw the guilty plea made pursuant to this Agreement.

**B.**     **Defendant's Waiver of Rights.**   If the defendant fails to keep any promise made

in this Agreement, the defendant gives up the right not to be placed twice in jeopardy for the

offenses to which the defendant entered a plea of guilty.  In addition, for any charge that is

brought as a result of the defendant's failure to keep this Agreement, the defendant gives up:

(1) any right under the Constitution and laws of the United States to be charged or tried in a

more speedy manner; and (2) the right to be charged within the applicable statute of limitations

period if the statute of limitations expired after the defendant entered into this Agreement.

Furthermore, if the defendant does not enter an acceptable plea, the Government

will move to continue the trial now set to allow the Government adequate time to prepare.  The

defendant agrees not to contest such a continuance, and agrees that the resulting delay would be

excludable time under 18 U.S.C. § 3161(h).

# XI.   MISCELLANEOUS

**A.**     **No Other Terms.**  This Agreement is the complete understanding between the

parties, and no other promises have been made by the Government to the defendant or to the

attorney for the defendant.  This Agreement does not prevent any governmental agency from

pursuing civil or administrative actions against the defendant or any property.  Unless an

exception to this paragraph is explicitly set forth elsewhere in this document, this Agreement

does not bind or obligate governmental entities other than the United States Attorney's Office for the District of Idaho.

## XII.   UNITED STATES' APPROVAL

I have reviewed this matter and the Plea Agreement.  This Agreement constitutes a formal plea offer from the Government.  Any oral discussions with the defendant and defense counsel about a plea do not constitute a plea offer.  Any written offer or agreement made prior to this Agreement is no longer a valid offer by the Government and is rescinded.  I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in the best interests of justice.

WENDY J. OLSON
United States Attorney
By:


_____           _____2/14/13_____
George W. Breitsameter                              Date
Assistant United States Attorney


_____ for        _____2/14/13_____
Mark L. Williams, Trial Attorney                    Date
U.S. Department of Justice Tax Division


## XIII.   ACCEPTANCE BY DEFENDANT AND COUNSEL

I have read and carefully reviewed every part of this Plea Agreement with my attorney.  I understand the Agreement and its effect upon my potential sentence.  Furthermore, I have discussed all of my rights with my attorney and I understand those rights.  No other promises or inducements have been made to me, directly or indirectly, by any agent of the Government, including any Assistant United States Attorney, concerning the plea to be entered in this case.  I

understand that this Agreement constitutes a formal plea offer from the Government. Any oral discussions by me or my counsel with the Government about a plea do not constitute a plea offer. Any written offer or agreement made prior to this Agreement is no longer a valid offer by the Government and is rescinded. In addition, no one has threatened or coerced me to do, or to refrain from doing, anything in connection with this case, including to enter a guilty plea. I am satisfied with my attorney's advice and representation in this case.

_____          2-14-13
_____          _____
Gary Bringhurst                             Date
Defendant

    I have read this Plea Agreement and have discussed the contents of the Agreement with my client. The Plea Agreement accurately sets forth the entirety of the Agreement. I have conveyed all written offers from the Government to the defendant pursuant to *Missouri v. Frye*, 2012 WL 932020 (U.S. March 21, 2012). I understand that this Agreement constitutes a formal plea offer from the Government. Any oral discussions by me or my client with the Government about a plea do not constitute a plea offer. Any written offer or agreement made prior to this Agreement is no longer a valid offer by the Government and is rescinded. I concur in my client's decision to plead guilty as set forth above.

_____          2/4/2013
_____          _____
Nathan Crane                                Date
Attorney for the Defendant

_____          2/4/2013
_____          _____
Sam Alba                                    Date
Attorney for the Defendant

**Plea Agreement**                    -15-                    Rev. November 2012 (General)